**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| ROGER DALE CONNELL, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:22CV935 |
| | ) | |
| KAREN ADAMS, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States
Magistrate Judge for a recommendation on Defendant Karen Adams'[1]
Motion to Dismiss (Docket Entry 11; <u>see also</u> Docket Entry 12
("Supporting Brief")), and Defendant Van Shaw's Motion to Dismiss
(Docket Entry 16; <u>see also</u> Docket Entry 17 ("Brief in Support")).
For the reasons that follow, the Court should deny both Motions to
Dismiss.

**I. BACKGROUND**

Plaintiff, at all relevant times a pretrial detainee at the
Cabarrus County Detention Center (the "CCDC") (Docket Entry 2 at
2), initiated this 42 U.S.C. § 1983 ("Section 1983") action against
Defendants (a medical provider at CCDC and the Sheriff of Cabarrus
County, respectively) for allegedly inadequate medical treatment at
the CCDC (<u>id.</u> at 2, 3). The Complaint contends that, beginning in

---

[1] The Plaintiff appears to have misnamed Karen Russell as
Karen Adams. For the sake of clarity, the Court will refer to
Karen Russell by her correct name in this Recommendation.

October 2021 (id. at 4), Defendants "refused [Plaintiff] medical treatment for Hepatitis C" (id.), and "stated that they won't treat [Plaintiff] at [CCDC] due to the possibility of [Plaintiff] being released" (id. at 5).  According to the Complaint, "[Plaintiff's] AST and ALT (liver enzymes) levels are very high[,] causing [Plaintiff] pain, hard[e]ning, and detereoration of [his] liver." (Id.)  The Complaint alleges further that the Hepatitis C "virus multipl[ies] on a daily basis . . . limit[ing Plaintiff's] body['s] ability to filter out toxins properly, making [Plaintiff] more sus[c]eptible to other viruses, infection, and diseases."  (Id.) As a result of the alleged denial of Hepatitis C treatment, Plaintiff seeks "punitive and compensatory money damages in the amounts of $8,000 [as to] each [Defendant]" (id.), intended for "pain and suffering, mental distress, [and the] price of treatments, medications[,] and doctors (id.).

Defendant Russell moved to dismiss the Complaint "pursuant to [Federal] Rule [of Civil Procedure] 12(b)(2), (4), (5) and (6)." (Docket Entry 12 at 1.)  In support of that Motion to Dismiss, the Supporting Brief contends that the Complaint fails to state a claim "because [D]efendant as named by Plaintiff does not exist."  (Id. at 2; see also id. ("The only person with the first name 'Karen' who was contracted by Southern Health Partners, Inc. to work at CCDC during the period at issue is Karen Russell, PA-C.").  The Supporting Brief further argues for dismissal under Federal Rule of

Civil Procedure 12(b)(2), (4), and (5), because "Plaintiff named and attempted to serve a non-existent defendant at the improper address for the purported employer or contractor for the non-existent defendant." (Id. at 5.) Due to the allegedly deficient process and improper service thereof, the Supporting Brief asserts this Court lacks personal jurisdiction over Defendant Russell, warranting dismissal. (See id. at 4, 6-7.)

Defendant Shaw moved to dismiss the Complaint on statutory and immunity grounds. (See Docket Entry 17 at 2-7.) First, the Brief in Support contends that "NCGS § 153A-225" (id. at 2), which requires Defendant Shaw (as Sheriff of Cabarrus County) to "provide a plan for provision of medical care to [] inmates" (id.), effectively absolves the Sheriff of liability for alleged lapses in medical treatment because, by "contract[ing] with Southern Health Partners" (id.), Defendant Shaw "does not have anything to do with the provision of medical care to the inmates" (id.). Additionally, the Brief in Support argues that sovereign immunity, public official immunity, and qualified immunity shield him from suit. (See id. at 2-5.) Finally, Defendant Shaw also sought dismissal under Federal Rule of Civil Procedure 12(b)(6), asserting that Plaintiff's "bare-boned allegations . . . state[] no viable claim against [ D]efendant [Shaw]." (Id. at 6-7.)

None of the foregoing contentions by either Defendant warrant dismissal, for the reasons identified below.

3

## II. DISCUSSION

### A. Rule 12(b)(4) Standards

A motion to dismiss under Rule 12(b)(4) challenges "the sufficiency of the form of the process." Davies v. Jobs & Adverts Online, Gmbh, 94 F. Supp. 2d 719, 721 n.5 (E.D. Va. 2000). "Essentially, a Rule 12(b)(4) motion to dismiss objects to a defect in the content of the documents served," Wright v. Tyson Foods, Inc., No. 5:18-CV-27, 2018 WL 3232776, at *1 (E.D.N.C. June 30, 2018), and "[a ] typical Rule 12(b)(4) challenge alleges that the entity named in the summons is different from the entity named in the complaint," id. In the instance of a naming error, "[t]he court may permit a summons to be amended." Fed. R. Civ. P. 4(a)(2). "[A] court [also] has the discretion to substitute *nunc pro tunc* the real party for the mistaken party following the dismissal of the complaint [against the mistaken party]." James v. University of N. Carolina Health Care Hosp., No. 1:18CV339, 2018 WL 4518700, at *4 (M.D.N.C. Sept. 20, 2018).

### B. Rule 12(b)(2) and (5) Standards

Rather than challenge the substance of process, "[a] motion under Rule 12(b)(5) . . . challeng[es] the manner or sufficiency of service of process." Plant Genetic Sys., N.V. v. Ciba Seeds, 933 F. Supp. 519, 526 (M.D.N.C. 1996). "[T]he technical requirements of service [found in Federal Rule of Civil Procedure 4(e)] should be construed liberally as long as the defendant had actual notice

4

of the pending suit." <u>Elkins v. Broome</u>, 213 F.R.D. 273, 275 (M.D.N.C. 2003). Even so, "the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." <u>Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.</u>, 733 F.2d 1087, 1089 (4th Cir. 1984). Rule 12(b)(2) and (5) often go hand-in-hand because "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." <u>Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.</u>, 484 U.S. 97, 104 (1987); <u>see also</u> <u>Hawkins v. i-TV Digitalis Tavkozlesi zrt.</u>, 935 F.3d 211, 228 (4th Cir. 2019) (identifying, as among "fundamentals," dictate that "[p]ersonal jurisdiction requires valid service of process that comports with due process").

<u>C. Rule 12(b)(6) Standards</u>

"A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint." <u>ACA Fin. Guar. Corp. v. City of Buena Vista, Va.</u>, 917 F.3d 206, 211 (4th Cir. 2019). "To sufficiently plead a claim, the Federal Rules of Civil Procedure require that a pleading . . . contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." <u>Id.</u> (citing Fed. R. Civ. P. 8(a) (internal brackets and quotation marks omitted)). Although "[t]his pleading standard does not require detailed factual allegations," <u>id.</u>, a complaint must "contain sufficient factual matter, accepted as true, to

5

'state a claim to relief that is plausible on its face,'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)(quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).[2]  The Court thus need not accept as true any "legal conclusions," <u>id.</u>, or "bare assertions devoid of further factual enhancement," <u>Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.</u>, 591 F.3d 250, 255 (4th Cir. 2009).

As a general matter, in ruling on a Rule 12(b)(6) motion, "a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." <u>E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.</u>, 637 F.3d 435, 448 (4th Cir. 2011).  Typically, a "court cannot go beyond these documents" without "convert[ing] the motion into one for summary judgment." <u>Id.</u>

---

2 Although the Supreme Court has reiterated that "[a] document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read <u>Erickson</u> to undermine <u>Twombly's</u> requirement that a pleading contain more than labels and conclusions," <u>Giarratano v. Johnson</u>, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying <u>Twombly</u> standard in dismissing pro se complaint); <u>accord</u> <u>Atherton v. District of Columbia Off. of Mayor</u>, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A pro se complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.'  But even a pro se complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting <u>Erickson</u>, 551 U.S. at 94, and <u>Iqbal</u>, 556 U.S. at 697, respectively)).

6

## D. Deliberate Indifference

Courts evaluate pretrial detainees' conditions of confinement in state custody under the Due Process Clause of the Fourteenth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535 (1979). "The due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner." Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988). "Thus, deliberate indifference to the serious medical needs of a pretrial detainee violates the [D]ue [P]rocess [C]lause." Young v. City of Mount Ranier, 238 F.3d 567, 575 (4th Cir. 2001).

In other words, "even though [a pretrial detainee's deliberate-indifference] claim arises under the Fourteenth Amendment, [courts] have traditionally looked to Eighth Amendment precedents in considering a Fourteenth Amendment claim of deliberate indifference to serious medical needs." Mays v. Sprinkle, 992 F.3d 295, 300 (4th Cir. 2021). The Eighth Amendment requires that prison officials "provide humane conditions of confinement," including, among other things, "ensur[ing] that inmates receive adequate . . . medical care," Farmer v. Brennan, 511 U.S. 825, 832–33 (1994).

To make out a constitutional claim for deprivation of medical care, a plaintiff must show that a defendant "acted with 'deliberate indifference' (subjective) to [the plaintiff's] 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225,

241 (4th Cir. 2008). A medical need qualifies as serious if it "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (internal quotation marks omitted). A defendant displays deliberate indifference when he possesses knowledge of the risk of harm to an inmate and knows that "his actions were insufficient to mitigate the risk of harm to the inmate arising from his medical needs." Id. (emphasis and internal quotation marks omitted); see also Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) ("To prove deliberate indifference, plaintiffs must show that 'the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" (brackets in original) (quoting Farmer, 511 U.S. at 837)).

"The subjective component . . . sets a particularly high bar to recovery." Iko, 535 F.3d at 241. In particular, "deliberate indifference entails something more than mere negligence, . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835. "It requires that a [defendant] actually know of and disregard an objectively serious condition, medical need, or risk of harm." De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013) (internal quotation marks omitted).

### E. Section 1983 Liability

Section 1983 makes actionable alleged deprivations of constitutional rights. See 42 U.S.C. § 1983. To state a viable

8

Section 1983 claim, Plaintiff must show that Defendants "deprived [him] of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49–50 (1999). "A state official can be liable in a § 1983 suit in three ways: in his personal capacity, his official capacity, or in a more limited way, his supervisory capacity." King v. Rubenstein, 825 F.3d 206, 223 (4th Cir. 2016).

As relevant here, for personal liability, the plaintiff must "show that the official, acting under color of state law, caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159, 166 (1985). "As a general matter, a [state actor] may incur [Section] 1983 liability only through affirmative misconduct." Randall v. Prince George's Cnty., 302 F.3d 188, 202 (4th Cir. 2002) (quoting Parratt v. Taylor, 451 U.S. 527, 535–36 (1981)). "[Section] 1983 must be 'read against the background of tort liability that makes a man responsible for the natural consequences of his actions.'" Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (quoting Monroe v. Pape, 365 U.S. 167, 187 (1961)). Accordingly, "it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.'" Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (quoting Vinnedge, 550 F.2d at 928).

9

"Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." Graham, 473 U.S. at 165 (internal quotation marks omitted). "To state a[n official-capacity] cause of action . . . a [S]ection 1983 plaintiff must plead (1) the existence of an official policy or custom; (2) that the policy or custom is fairly attributable to the municipality; and (3) that the policy or custom proximately caused the deprivation of a constitutional right." Pettiford v. City of Greensboro, 556 F. Supp. 2d 512, 530 (M.D.N.C. 2008).

### F. Defendant Russell's Motion to Dismiss

*Rule 12(b)(6)*

As an initial matter, Rule 12(b)(6) represents an improper vehicle to dismiss the Complaint based on the claim that Plaintiff "named 'Karen Adams' as a defendant, . . . [when] there is no 'Karen Adams' [only a Karen Russell] employed by or independently contracted by Southern Health Partners, Inc. to provide medical services at CCDC." (Docket Entry 12 at 3.) For one, a naming error does not bear on "the sufficiency of the ***claims*** pled in a complaint." ACA Fin. Guar., 917 F.3d at 211 (emphasis added). Moreover, Defendant Russell would support her assertion of a naming error by directing the Court to an affidavit attached to the Supporting Brief. (See Docket Entry 12 at 3.) But the Court's consideration of said affidavit would "convert[] the [M]otion [to

10

Dismiss] into one for summary judgment." E.I. du Pont, 637 F.3d at 448; see also Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion **must** be treated as one for summary judgment under Rule 56." (emphasis added)).  Finally, a dispute over the proper name on a complaint challenges "the sufficiency of the form of the process," Davies, 94 F. Supp. 2d at 721 n.5, and therefore arises under Rule 12(b)(4).  For these reasons, the Court should deny Defendant Russell's Motion to Dismiss under Rule 12(b)(6).

### Rule (12(b)(4)

Although Defendant Russell's Supporting Brief merges its arguments under Rule 12(b)(4) and (5), the Court should consider them separately, as the two subsections address different components of process.  First, as to Rule 12(b)(4), the Supporting Brief argues for dismissal on the ground that Defendant Russell "was not properly named."  (Docket Entry 12 at 3.)  The Supporting Brief contends further that "the [C]ourt may dismiss a complaint for naming and attempting to serve the wrong party."  (Id. at 5 (citing Priast v. Dct Sys. Group, Inc., 5:14-CV-115, 2015 U.S. Dist. LEXIS 3721, at *15 (W.D.N.C. Jan. 13, 2015)).

This argument does not support dismissal because, as the United States Court of Appeals for the Fourth Circuit recognized over 75 years ago, "a mere misnomer [] injure[s] no one, and there

is no reason why it [can]not [] be[] corrected by amendment." United States v. A.H. Fischer Lumber Co., 162 F.2d 872, 874 (4th Cir. 1947). In A.H. Fischer, the Fourth Circuit held that a district court's dismissal under Rule 12(b)(4) of a complaint that misnamed the defendant constituted legal error, and reversed. See id. at 874-75 (while citing with approval "39 Am. Jur. 1002" for the proposition that, "if the right party is before the court, although under a wrong name, an amendment to cure a misnomer of parties will be allowed"). Other courts in this circuit, and other circuit courts, have similarly observed that "amendment is preferable to dismissal when a party has been misnamed." Ross v. CNAC (Smart Fin.), No. 3:12-CV-827, 2013 WL 1858560, at *3 (W.D.N.C. Mar. 27, 2013), recommendation adopted, No. 3:12-CV-827, 2013 WL 1858589 (W.D.N.C. May 2, 2013); see also Roberts v. Michaels, 219 F.3d 775, 777-78 (8th Cir. 2000) (describing as legal error district court's "fail[ure] to consider the well-recognized distinction between a complaint that sues the wrong party, and a complaint that sues the right party by the wrong name."); Coastal Neuro-Psychiatric Assocs., P.A. v. Onslow Cnty. Hosp. Auth., 607 F. Supp. 49, 50 (E.D.N.C. 1985) (denying motion to dismiss based on misnaming of defendant).

Defendant Russell's citation to the Priast case (Docket Entry 12 at 5) also does not support dismissal. In that case, the plaintiff sued multiple defendants, misnaming one of them. Priast

12

v. Dct Sys. Group, Inc., 2015 U.S. Dist. LEXIS 3721, *3. The
plaintiff then moved to amend his complaint to replace the misnamed
defendant, a company, with the owner and general manager of that
company. Id. at *7. But another of the defendants had a contract
with the plaintiff, and that contract had a forum selection clause
vesting jurisdiction of disputes in the Northern District of
Georgia. Id. Because the court in Priast "transfer[red the case
to] to the Northern District of Georgia [in light of] the
[a]greement's forum-selection clause, and since [the p]laintiff's
Proposed Amended Complaint [sought] to name a new defendant
associated with the actual intended [defendant], [the court deemed]
dismissal of [the misnamed defendant] [as] proper." Id. at *16.

Thus, the misnaming of a defendant in Priast provided no
independent basis for dismissal; rather, the plaintiff's amendment
to his complaint, where he sought to remove the misnamed defendant
from the action and replace that party with the company's owner and
general manager, warranted dismissal of the misnamed defendant.
Accordingly, the Court should deny the Motion to Dismiss on Rule
12(b)(4) grounds, and order Plaintiff to file an amended complaint
which corrects the misnomer of Karen Russell, see A.H. Fischer, 162
F.2d at 874.

### Rule 12(b)(2) and (5)

Defendant Russell's Supporting Brief also argues for dismissal
due to improper service of process. (Docket Entry 12 at 4-6.) In

13

that regard, the Supporting Brief details that, rather than serve Defendant Russell through one of the methods prescribed by Federal Rule of Civil Procedure 4(e) or North Carolina Rule of Civil Procedure 4(j), Plaintiff attempted to effect service (through the United States Marshals) at an incorrect address for Defendant Russell's employer, which ultimately resulted in an individual affiliated with Defendant Russell's employer, who "was not and is not an agent authorized by appointment or by law to receive process" (id. at 6) on behalf of Defendant Russell or her employer, picking up and signing for the Summons and Complaint (see Docket Entry 8 at 7). By attached affidavit, Defendant Russell attests that she "ha[s] never been personally served with a copy of the Summons and Complaint in this lawsuit" (Docket Entry 12-2 at 1) and first learned of the lawsuit "[o]n or about January 10, 2023 [when she] was notified of the existence of this action by counsel" (id. at 2), after which, the next day, she "was provided a copy of the Complaint . . . by counsel" (id. at 2).[3]  Plaintiff's failure to properly serve Defendant Russell with process, the Supporting Brief

_____

    3 Curiously, then, despite the naming error, Defendant Russell learned of this lawsuit the day after the U.S. Marshals sent the Summons and Complaint to the incorrect address via certified mail (see Docket Entry 8 at 1 (noting use of "certified mail" on "1/9/23")) and six days **prior** to the employee picking up the Summons and Complaint from the incorrect address (compare Docket Entry 12-2 at 1, with Docket Entry 8 at 7 (letter from employee of Defendant Russell's employer bearing date of "01/16/2023" for when employee "[p]icked up the . . . package").)

contends, warrants dismissal under Rule 12(b)(2) and (5). (Docket Entry 12 at 6-7.)

As mentioned previously, "the technical requirements of service should be construed liberally as long as the defendant had actual notice of the pending suit." Elkins, 213 F.R.D. at 275. But, "the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." Armco, 733 F.2d at 1089. To that end, although "[s]ervice of process is not freestyle, and courts are directed not to overlook procedural deficiencies just because actual notice occurred," Shaver v. Cooleemee Volunteer Fire Dep't, No. 1:07CV00175, 2008 WL 942560, at *2 (M.D.N.C. Apr. 7, 2008), "[d]ismissal under Rule 12(b)(5) is not justified where it appears that service can be properly made," Plant Genetic, 933 F. Supp. at 527 (internal quotation marks omitted); see also Gregory v. U.S./U.S. Bankr. Ct. for Dist. of Colorado, 942 F.2d 1498, 1500 (10th Cir. 1991) (stating "general rule [] that when a court finds that service is insufficient but curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the defendant" (internal quotation marks omitted)); Rivera Otero v. Amgen Mfg. Ltd., 317 F.R.D. 326, 329 (D.P.R. 2016) (curable defects in first attempt at service of process do not warrant dismissal under Rule 12(b)(5)).

15

"[D]ismissal of a civil action for [inadequate service of process] is inappropriate unless otherwise a party's rights would be seriously prejudiced or no reasonably conceivable means of acquiring jurisdiction over the defendant remains." Miree v. United States, 490 F. Supp. 768, 776 (N.D. Ga. 1980). The Supporting Brief does not attempt to establish prejudice (nor could it, as Defendant Russell attested to learning of the suit at the same time the U.S. Marshals attempted to mail her service of process, notwithstanding the misnaming in the Complaint) or the impossibility of this Court acquiring personal jurisdiction over her. As a result, Plaintiff's inadequate first attempt at service (particularly where, as here, (1) Plaintiff proceeds pro se and relies in part on the U.S. Marshals for service, and (2) Defendant Russell suffered no apparent prejudice) does not warrant dismissal under Rule 12(b)(2) or (5).

The Court should not, however, consider Plaintiff's attempt at service adequate just because Defendant Russell has actual notice of the lawsuit. As the Fourth Circuit has made clear, "[a]ctual notice does not equate to sufficient service of process, even under the liberal construction of the rules applicable to a pro se plaintiff." Scott v. Maryland State Dep't of Lab., 673 F. App'x 299, 305 (4th Cir. 2016); see also In re Newbrook Shipping Corp., 31 F.4th 889, 897 (4th Cir. 2022) ("Some courts have ventured beyond that required by the Rules to permit service by any means

16

that provides actual notice. Doing so, they have reasoned, conserves resources that would be wasted if compliance with the Rules was required. . . . But regardless of [the] wisdom [of that practice], . . . [a]ctual notice with no delivery to the named person fails to satisfy the Rule's demands."). Accordingly, the Court should deny Defendant Russell's Motion to Dismiss under Rules 12(b)(2) and (5), but order Plaintiff to properly effect service. To assist Plaintiff (who, again, proceeds pro se) the Court should order that Defendant Russell's counsel (as an officer of the Court) either (1) provide a proper address for Defendant Russell, or (2) propose some other solution, such as agreeing to accept service on her behalf.

## G. Defendant Shaw's Motion to Dismiss

### *Statutory Grounds*

Defendant Shaw's Brief in Support first contends that "NCGS § 153A-225" (Docket Entry 17 at 2) effectively absolves the Sheriff of liability for any claims involving inadequate medical care in a county detention facility because that statute "requires the County to provide a plan for provision of medical care [to] inmates[, which t]he County does [] through a contract with Southern Health Partners, Inc.[, and accordingly t]he Sheriff . . . does not have anything to do with the provision of medical care to the inmates" (id.). The Supporting Brief goes on to argue that Defendant Shaw,

17

"by statute (NCGS § 153A-225)[,] is not responsible for provision of the medical care at the [CCDC]."  (Id. at 7.)

Section 153A-225 appears to establish the opposite of what Defendant Shaw contends, by "***creat[ing] a nondelegable duty on sheriffs*** operating county jails to develop a plan and provide medical services to jail inmates," Gunter v. S. Health Partners, Inc., No. 1:16CV262, 2021 WL 4255370, at *14 (M.D.N.C. Sept. 17, 2021) (emphasis added).  In addition, "N.C. Gen.Stat. § 153A-221 . . . creates an affirmative duty on Sheriff's [sic] operating county jails to provide medical and mental health services to jail inmates."  State v. Wilson, 183 N.C. App. 100, 104 (2007).

North Carolina law thus codifies Defendant Shaw's duty, as Sheriff of Cabarrus County, to provide medical care to jail inmates; the statute does not, and could not, absolve him of such a duty.  See Medley v. North Carolina Dep't of Correction, 330 N.C. 837, 844 (1992) (holding that "the duty to provide adequate medical care to inmates, . . . recognized in ***state statute*** and caselaw, is such a fundamental and paramount obligation of the state that the state ***cannot absolve itself of responsibility*** by delegating it to another" (emphasis added)).  As "[s]everal district courts, including th[is one and others] in this circuit, have [] concluded [], when contracting out medical care of inmates to third parties, local governments have a continuing obligation to ensure the provision of adequate inmate medical care under the Eighth

18

Amendment." Simmons v. Corizon Health, Inc., 122 F. Supp. 3d 255, 266 (M.D.N.C. 2015) (citing cases). In sum, Defendant Shaw's statutory argument lacks merit, and the Court should deny his Motion to Dismiss on those grounds.

*Immunity Grounds*

Defendant Shaw's Brief in Support further argues for dismissal, citing three different forms of immunity. (Docket Entry 17 at 2-5.) None apply to Defendant Shaw in this case.

First, the Brief in Support cites Eleventh Amendment sovereign immunity. "Eleventh Amendment immunity protects . . . states[,] . . . state agents[,] and state instrumentalities." Bland v. Roberts, 730 F.3d 368, 389-90 (4th Cir. 2013) (referencing Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71 (1989), and Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997), respectively). "The Eleventh Amendment, however, affords no protection to local government entities and employees." Harter v. Vernon, 101 F.3d 334, 337 (4th Cir. 1996). North Carolina Sheriffs qualify as local, not state, government officials, and thus cannot avail themselves of Eleventh Amendment Immunity. See id. at 343 (holding that "the Eleventh Amendment does not bar a suit against a North Carolina sheriff in his official capacity"); Cash v. Granville Cnty. Bd. of Educ., 242 F.3d 219, 226 (4th Cir. 2001) (citing Harter with approval in noting that "a county sheriff's duties in North Carolina can be primarily local"). Accordingly,

19

Eleventh Amendment Immunity offers Defendant Shaw no relief, and provides no basis for dismissal.

Second, the Brief in Support cites "public official immunity, a form of governmental immunity." (Docket Entry 17 at 3; see also id. at 4 (describing "doctrine of governmental immunity [a]s clearly applicable to [ Defendant Shaw] in this case, as he was sued in his official capacity").) But public official immunity represents a "state law defense[]," Knibbs v. Momphard, 30 F.4th 200, 213 (4th Cir. 2022), to claims arising under state law, see Hensley on behalf of N. Carolina v. Price, 876 F.3d 573, 587 (4th Cir. 2017) (evaluating applicability of public official immunity to "plaintiffs' N[egligent] I[nfliction of] E[motional] D[istress] and wrongful death claims" arising under North Carolina law). Because Plaintiff's claim here arises under Section 1983 (a federal law), public official immunity affords no relief to Defendant Shaw.

Finally, the Brief in Support references qualified immunity. (Docket Entry 17 at 4.) Although the Brief in Support does not fully develop an argument as to qualified immunity, it does note that "[q]ualified immunity can protect local government officers from ***personal liability*** for violations of an individual's rights under federal law." (Id. (emphasis added).) This explanation of qualified immunity demonstrates its inapplicability in this case: "an official sued in his personal capacity may raise personal immunity defenses such as absolute or qualified immunity, however,

20

these types of immunity are unavailable for an official sued in his official capacity." <u>Benton v. Layton</u>, No. 3:22-CV-225, 2022 WL 4274121, at *4 (E.D. Va. Sept. 15, 2022); <u>see also</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 166–67 (1985) (holding that, "[w]hen it comes to defenses to liability, an official in a personal-capacity action may . . . be able to assert . . . qualified immunity," but that, "[i]n an official-capacity action, th[is] defense[ is] unavailable" (internal citations and parentheses omitted)). Plaintiff here sued Defendant Shaw only in his official capacity, not his individual capacity. (<u>See</u> Docket Entry 2 at 2 (checking "Official capacity" box, but not "Individual capacity" box under Defendant Shaw).) Defendant Shaw cannot raise a qualified immunity defense to an official capacity suit.

Because sovereign immunity, public official immunity, and qualified immunity do not apply in this case, the Court should deny Defendant Shaw's Motion to Dismiss on immunity grounds.

### *Rule 12(b)(6)*

Finally, Defendant Shaw's Brief in Support argues for dismissal under Rule 12(b)(6), stating that "[t]he [C]omplaint states no viable claim upon which relief may be granted against [ D]efendant [Shaw]. There are some bare-boned allegations by [ P]laintiff concerning being denied treatment for Hepatitis C, but the [C]omplaint alleges no specific facts . . . ." (Docket Entry 17 at 6.) The Court should reject this final argument. As

21

explained previously, to raise a constitutional claim for deprivation of medical care, a plaintiff must show that a defendant "acted with 'deliberate indifference' (subjective) to [the plaintiff's] 'serious medical needs' (objective)." Iko, 535 F.3d at 241. Hepatitis C "qualifies as a serious medical condition and thus satisfies the objective component of [Plaintiff's] deliberate indifference claim." Gordon v. Schilling, 937 F.3d 348, 356 (4th Cir. 2019); see also Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (noting that defendants "wisely do not deny that" Hepatitis C constitutes a serious medical need).

As for Defendant Shaw's alleged deliberate indifference, the Complaint asserts that the "[CCDC (Van Shaw) . . . ha[s] refused [Plaintiff] treatment for Hepatitis C" (Docket Entry 2 at 4), and that said refusal represents a policy of the CCDC (see id. at 5 ("[The CCDC] (Van Shaw) stated that they won't treat me at [the CCDC] due to the possibility of [Plaintiff] being released[, and that ] it['s] just standard.").) Federal courts have recognized that a failure to provide Hepatitis C treatment to inmates, including pretrial detainees in jail, can form the basis of a claim for deliberate indifference. See, e.g., Allah v. Thomas, 679 F. App'x 216, 220-21 (3d Cir. 2017) (vacating district court dismissal because allegation that prison inmate "did not receive *any* treatment for his Hepatitis C condition" plausibly set forth an Eighth Amendment claim); Wood v. Clear, No. 7:20-CV-00719, 2021 WL

22

4443078, at *4 (W.D. Va. Sept. 28, 2021) (ruling jail superintendent not deliberately indifferent to inmate's needs for Hepatitis C treatment because, "[a]lthough [the plaintiff's] lab work confirmed the presence of hepatitis C, the medical staff determined that [the plaintiff] did not meet the guidelines for treatment because his liver function levels fell within normal limits"); Conrad v. Akers, No. 7:10-CV-00560, 2011 WL 3847017, at *9 (W.D. Va. Aug. 30, 2011) (finding jail doctor not deliberately indifferent to medical needs of pretrial detainee with Hepatitis C because doctor "frequently met with [the] plaintiff while he was at the Jail, ordered blood tests, referred [the] plaintiff to a specialist and the emergency room when necessary, and authorized various prescriptions").

Taking the Complaint's well-pleaded allegations as true, the CCDC (through Defendant Shaw) employs a policy of refusing Hepatitis C treatment to pretrial detainees. (See Docket Entry 2 at 16 (note from nurse to Plaintiff stating "we do not treat Hep[atitis C] on the county level").) Such a policy may yet pass constitutional muster. See Crigger v. Wright, No. 1:15CV713, 2016 WL 1626580, at *4 (E.D. Va. Apr. 20, 2016) (granting summary judgment in favor of defendants where jail policy refused inmates Hepatitis C treatment because "deferring treatment [until inmate entered department of corrections custody] would allow [the] plaintiff the advantage of being able to receive the full course of

23

treatment without interruption, which is believed by the medical community to be advantageous"); but see id. at *2 (noting that newer Hepatitis C drug with shorter treatment cycle "was not an available treatment regimen" at the jail in 2015), *4 (affirming jail policy which provided that, "in the *absence of acute symptoms*[,] treatment for Hepatitis C is not initiated while an inmate is confined in a local jail" (emphasis added)).  But, at this stage of the proceedings, Plaintiff plausibly sets forth a claim for deliberate indifference to his Hepatitis C, a serious medical need.  The Court should therefore deny Defendant Shaw's Motion to Dismiss on Rule 12(b)(6) grounds.

### III. CONCLUSION

**IT IS THEREFORE RECOMMENDED** that:

1) Both Motions to Dismiss (Docket Entry 11; Docket Entry 16) be denied;

2) Defendant Russell's counsel either (1) provide a correct address for Defendant Russell, or (2) propose another solution;

3) Plaintiff submit an amended complaint correcting Defendant Russell's name; and

4) Plaintiff properly effect service on Defendant Russell.

This 12th day of April, 2023.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**
