**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| ROGER DALE CONNELL, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:22cv935 |
| | ) | |
| KAREN RUSSELL, PA-C, and | ) | |
| SHERIFF VAN SHAW, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on Motions for Summary Judgment filed by Defendants Karen Russell and Sheriff Van Shaw (collectively, the "Summary Judgment Motions") (Docket Entries 36, 38). (<u>See</u> Docket Entry dated Feb. 27, 2024.) The Court should enter summary judgment for Defendant Russell (on the individual-capacity claim against her) based on her qualified-immunity defense and should enter summary judgment for Defendant Shaw on the merits of the official-capacity claim against him, leaving for trial only Plaintiff's official-capacity claim against Defendant Russell.

## INTRODUCTION

Plaintiff commenced this action by filing a pro se Complaint against Defendant Russell (in her individual and official capacities) and Defendant Shaw (in his official capacity) under 42 U.S.C. § 1983, based on events which occurred beginning on October 30, 2021, during Plaintiff's pretrial detention at the Cabarrus

County Detention Center (at times, the "Jail"). (See Docket Entry 2; see also Docket Entry 24 (Amended Complaint correcting Defendant Russell's name); Docket Entry 27 (ordering case caption amended to reflect Defendant Russell's correct name).) Plaintiff's Amended Complaint alleges that Defendants Russell and Shaw violated "[Plaintiff's] Eigth [sic] and Fourteenth Ammendment [sic] rights to adequate medical care for a serious medical need." (Docket Entry 24 at 3.)[1] The Amended Complaint elaborates as follows:

> Cabarrus County Detention Center ([Defendant] Shaw) and [its health care] provider ([Defendant] Russell) are refusing [Plaintiff] Hepatitis C treatment when (A) bloodwork confirms [he] ha[s] Hep[atitis] C, (B) knowing it is a chronic infectious disease, [and] (C) knowing the virus multiplies dayly [sic] damaging [his] liver and body.
>
> . . . .
>
> [Defendant] Russell . . . ha[s] been denying [Plaintiff] treatment for Hepatitis C since October 30th 2021. Medical staff ([Defendant] Russell) and the Cabarrus County Detention Center ([Defendant] Shaw) stated that they will not treat [Plaintiff] on the county level for [his] Hep[atitis] C due to [him] possibly leaving. The provider ([Defendant] Russell) and the Cabarrus County Detention Center ([Defendant] Shaw) both deny that this is a personal policy not to treat [Plaintiff], that it is just standard.
>
> . . . .
>
> [Plaintiff's] AST and ALT (liver enzymes) levels are extremely high and the virus has multiplied into the millions causing [him] pain, hardning [sic], and

---

1 Pin cites to Docket Entries refer to the page numbers that appear in the footer appended thereto upon docketing in the CM/ECF system (not any original pagination). Quotations from Plaintiff's filings utilize standard capitalization conventions.

2

> deterioration of [his] liver. This is made worse daily
> due to the viruses [sic] rapid mutation in the body
> daily. [Plaintiff] being infected with the virus limits
> [his] body's abilitys [sic] to filter out toxins making
> [him] more susceptible to other viruses, diseases and
> infections. [Plaintiff] was gave [sic] lactalode 1 time
> to help [him] deficate [sic]. [Plaintiff] was giving
> [sic] no treatment for Hepatitis C and [he] need[s]
> treatment.

(Id. at 4-5 (stray periods omitted); see also id. at 5 ("asking the Court[] to grant [Plaintiff] punitive and compensatory money damages," as well as to order "all filling [sic] fee[s and] court costs be paid for by the Defendants" (stray comma omitted)).)

Defendants Russell and Shaw answered the Amended Complaint. (See Docket Entries 30, 31.) In their answers, Defendants Russell and Shaw, inter alia, "expressly denied . . . [they were] deliberately indifferent . . . or damaged or harmed Plaintiff in any way." (Docket Entry 30 at 2; Docket Entry 31 at 2.) Defendants Russell and Shaw also both asserted "entitle[ment] to qualified immunity from Plaintiff's suit." (Docket Entry 30 at 3; Docket Entry 31 at 3).

The Court (per the undersigned Magistrate Judge) promptly "adopt[ed a] Scheduling Order" (Text Order dated June 9, 2023), authorizing six months of discovery (see id.). After discovery closed, Defendants Russell and Shaw timely filed the Summary Judgment Motions (Docket Entries 36, 38) and supporting memoranda (Docket Entries 37, 39), along with an "Affidavit of Sheriff Van Shaw" (Docket Entry 40 at 1 (bold and all-caps font omitted)) and

3

an "Affidavit of Karen Michelle Russell, PA-C" (Docket Entry 41 at 1 (bold and all-caps font omitted)). Defendant Russell appended to that last document redacted medical records for Plaintiff (see Docket Entry 41-1) and Defendants Russell and Shaw filed under seal the unredacted version of those records (see Docket Entry 43).[2]

The Clerk then sent Plaintiff a letter advising him of his "right to file a 20-page response in opposition to the [Summary Judgment M]otions" (Docket Entry 45 at 1 (parentheses omitted)), as well as "affidavits setting out [his] version of any relevant disputed material facts or . . . other responsive material" (id.; see also id. ("A response to a motion for summary judgment must be filed within 30 days from the date of service on you.")). That letter explicitly cautioned Plaintiff that a "failure to . . . file affidavits or evidence in rebuttal within the allowed time may cause the [C]ourt to conclude that the [Summary Judgment Motions'] contentions are undisputed and/or that [he] no longer wish[es] to pursue the matter." (Id.)

Plaintiff timely opposed the Summary Judgment Motions (see Docket Entries 46 (the "Response"), 47 (the "Response Memorandum")), and filed his own set of medical records (see Docket Entries 48, 48-1, 48-2, 48-3, 48-4; see also Docket Entry 47-1 at 1 (setting out Plaintiff's averment that he had "submitt[ed] to the

_____

2 Defendants Russell and Shaw filed a motion to seal the above-referenced records. (Docket Entry 42.) The undersigned Magistrate Judge will address that motion by separate order.

4

Court[] all [his] evidence supporting [his] case . . . unsealed due to the fact [that his place of imprisonment] does not help inmates with copies of legal documents"); Docket Entry 49 at 1 (same)).[3] Defendants Russell and Shaw thereafter timely replied. (See Docket Entries 51, 52.)

## DISCUSSION

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When considering summary judgment, the Court "tak[es] the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). Put another way, the nonmoving "party is entitled to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, and all internal conflicts in it resolved favorably to him." Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (internal brackets and quotation marks omitted). If, applying that standard, the Court "find[s] that a reasonable jury

---

3 The Clerk nonetheless placed under seal the records filed by Plaintiff and the undersigned Magistrate Judge will address that matter by separate order.

could return a verdict for [the nonmoving party], then a genuine factual dispute exists and summary judgment is improper." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996); see also Anderson, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

As detailed in the Introduction, Plaintiff has asserted a claim for violation of his "Eigth [sic] and Fourteenth Ammendment [sic] rights to adequate medical care for a serious medical need." (Docket Entry 24 at 3.). That claim rests on the following foundation: "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 199-200 (1989). In other words, "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his . . . medical care . . .[,] it transgresses the substantive limits on state action set by the Eighth Amendment [in the case of convicted prisoners] and the Due Process Clause [of the Fourteenth Amendment in the case of pretrial detainees]." Id. at 200; see also Mays v. Sprinkle, 992 F.3d 295, 300 (4th Cir. 2021) ("[S]ince [the plaintiff] was a pretrial detainee and not a convicted

prisoner, the Fourteenth Amendment, and not the Eighth Amendment, governs his claim." (internal quotation marks omitted)); <u>Parrish ex rel. Lee v. Cleveland</u>, 372 F.3d 294, 302 (4th Cir. 2004) ("In cases where the government is accused of failing to attend to a detainee's serious medical needs, . . . conduct that amounts to deliberate indifference . . . can support a Fourteenth Amendment claim." (internal quotation marks omitted)).

Defendant Russell

In moving for summary judgment, Defendant Russell has contended "that the undisputed evidence demonstrates the lack of genuine issue and [sic] material fact, and entitles [her] to judgment as a matter of law." (Docket Entry 36 at 1.) To develop that contention, the argument portion of Defendant Russell's supporting brief mistakenly frames Plaintiff's claim for deliberate indifference to his serious medical needs during his pretrial detention – "starting October of 2021 through January of 2023" (Docket Entry 24 at 4)[4] – as arising under the Eighth Amendment, rather than the Fourteenth Amendment. (See, e.g., Docket Entry 37 at 12, 13, 15.) Until very recently, that mistake would have lacked any practical significance, because: (A) after "the Supreme Court finally adopted a test for Eighth Amendment deliberate

_____

4 Public records confirm that Plaintiff completed a state prison sentence on September 11, 2021, and incurred additional convictions in Cabarrus County on January 25, 2023. <u>See</u> https://webapps.doc.state.nc.us/opi/offendersearch.do?method=view (results for "Roger D. Connell, Jr.") (last visited May 20, 2024).

7

indifference claims in *Farmer v. Brennan*[,] 511 U.S. 825 (1994)," Short v. Hartman, 87 F.4th 593, 606-07 (4th Cir. 2023) (parallel citations omitted); see also id. at 607 ("That test is subjective[.]"), "a consensus emerged among the courts of appeal[s] that *Farmer*'s subjective Eighth Amendment standard applied to Fourteenth Amendment claims," id. at 607; and (B) "[the United States Court of Appeals for the Fourth Circuit], too, extended *Farmer* to Fourteenth Amendment claims," id.; see also Brown v. Harris, 240 F.3d 383, 388 n.6 (4th Cir. 2001) (reaffirming "that the same 'deliberate indifference' standard applies to both inmates and pretrial detainees"). However, the Fourth Circuit now has held that "the heightened, subjective Eighth Amendment deliberate indifference standard does not extend to Fourteenth Amendment cases," Short, 87 F.4th at 609. See id. at 609-11.

To replace the previous standard, the Short Court formulated this four-element test for a Fourteenth Amendment "claim for deliberate indifference to a medical need," id. at 611:

> (1) the[ plaintiff] had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the [plaintiff] had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the [plaintiff] was harmed.

Id. The Short Court thereafter explained:

> The objective test we adopt today differs from our prior subjective test in one respect only. The plaintiff no

8

longer has to show that the defendant had actual knowledge of the [plaintiff's] serious medical condition and consciously disregarded the risk that [the defendant's] action or failure to act would result in harm. . . . Now, it is sufficient that the plaintiff show that the defendant's action or inaction was . . . <u>objectively unreasonable</u>: that is, the plaintiff must show that the defendant should have known of that condition and that risk, and acted accordingly. . . .

To be clear, it is still <u>not enough</u> for the plaintiff to allege that the defendant <u>negligently</u> or accidentally failed to do right by the detainee. <u>Negligence was not enough before and it is not enough now</u>.

<u>Id.</u> at 611-12 (emphasis added) (internal citations and quotation marks omitted).[5]

In advancing the argument that "[Defendant] Russell was not deliberately indifferent to any serious medical condition suffered by Plaintiff" (Docket Entry 37 at 11 (underscoring omitted)), Defendant Russell's supporting memorandum, filed on January 12, 2024 (<u>see</u> <u>id.</u> at 21), does <u>not</u> attempt to apply the facts of this case against the above-quoted elements of claims for deliberate indifference under the Fourteenth Amendment, announced by the Fourth Circuit on December 8, 2023, <u>see</u> <u>Short</u>, 87 F.4th at 594. (<u>See</u> Docket Entry 37 at 11-15.) Instead, after highlighting pre-<u>Short</u>, case law focused on the Eighth Amendment (<u>see</u> <u>id.</u> at 12-13), Defendant Russell made these factual assertions:

---

5 The distinction <u>Short</u> draws between its new standard for deliberate indifference under the Fourteenth Amendment and negligence may tax those tasked with practical application of that distinction. <u>See</u> <u>Patterson v. Stanly Cnty. Det. Ctr.</u>, No. 22CV515, 2024 WL 1936499, at *4 n.2 (M.D.N.C. May 2, 2024) (unpublished).

1) "upon first notice of [Plaintiff's] hepatitis C diagnosis, the [Jail's] medical staff took action to determine the status of Plaintiff's hepatitis C" (id. at 14 (citing Docket Entry 41 at 4-5 and Docket Entry 43 at 8-9, 42-57));

2) "[u]pon determining Plaintiff's hepatitis C status, [Defendant] Russell determined that the local outside infectious disease providers would not see and treat Plaintiff for his hepatitis C diagnosis while he was an inmate at the Jail" (id. (citing Docket Entry 41 at 4, 5-6 and Docket Entry 43 at 9, 44));

3) "[t]his was a policy of the local outside infectious disease specialist providers, and was not a policy of the Jail nor of the medical providers at the Jail, including [Defendant] Russell" (id. (citing Docket Entry 40 at 3 and Docket Entry 41 at 4, 5-6));

4) "[Defendant] Russell, and several other medical personnel at the Jail, explained the policy of the local outside infectious disease providers to Plaintiff, and informed Plaintiff that[,] while he was at the Jail, they would monitor him and would treat any symptoms he reported" (id. (citing Docket Entry 41 at 4, 5-6, 7 and Docket Entry 43 at 9-10));

5) "Plaintiff's blood work was monitored while he was at the Jail, and he did receive treatment for any symptoms related to his hepatitis C which he reported to medical staff" (id. (citing Docket Entry 43 at 10, 65-66, 68-69, 72-73); see also id. ("Plaintiff was

10

seen and treated, when appropriate, for any and all symptoms he reported to medical staff while he was at the Jail." (citing generally Docket Entries 41 and 43))); and

6) "[t]he monitoring and symptomatic treatment given to Plaintiff by [Defendant] Russell and the medical providers at the Jail was in fact in line with a prior recommendation from Central Prison" (id. (citing Docket Entry 43 at 56-57); see also id. at 14-15 ("[T]he course of treatment recommended by the Central [Prison] providers was for Plaintiff's hepatitis C to be monitored until he could be referred by a case manager to local treatment facilities upon his ultimate release from incarceration." (citing Docket Entry 43 at 56-57))).

Following those factual assertions, Defendant Russell argued:

> The monitoring and treatment of Plaintiff by [Defendant] Russell and the medical staff at the Jail, in light of the policy of local outside infectious disease experts not to treat hepatitis C in incarcerated inmates, was the opposite of deliberate indifference; rather, [Defendant] Russell and the medical staff at the Jail provided monitoring and treatment available to Plaintiff for his hepatitis C in light of the inability to obtain outside infectious disease treatment for Plaintiff's hepatitis C. Therefore, [Defendant] Russell was not deliberately indifference [sic] to Plaintiff's medical needs and she is entitled to qualified immunity regarding Plaintiff's claims, and such claims should be dismissed.

(Id. at 15 (emphasis added); see also id. at 15-16 (arguing, under separate subheading entitled "Plaintiff did not suffer any substantial harm as a result of any alleged acts or inaction by [Defendant] Russell," that "Plaintiff cannot establish a genuine

dispute of material fact, and summary judgment should be granted in [Defendant] Russell's favor," because "monitoring and symptomatic treatment given to Plaintiff by [Defendant] Russell and the medical providers at the Jail was in line with th[e] recommendation from Central Prison" and "did not itself create a substantial risk of harm to Plaintiff, and was rather initiated to prevent a substantial risk of harm to Plaintiff while he was incarcerated" (underscoring omitted)).)

Defendant Russell's supporting memorandum subsequently expands upon her argument for summary judgment based upon her qualified-immunity defense as follows:

> [Defendant] Russell is entitled to qualified immunity, as no reasonable person in her position would have known that her actions in monitoring Plaintiff's hepatitis C and treating his [sic] any of his chronic or acute symptoms would have constituted a violation of some clearly established right of Plaintiff. . . . [T]he undisputed evidence establishes that Plaintiff received appropriate, timely treatment from [Defendant] Russell and all of the medical providers at the Jail. (*See generally* [Docket Entries 41 and 43]). [Defendant] Russell treated Plaintiff in accordance with her best medical judgment and in accordance with the applicable standard of care, as would a reasonable person in her position as a medical provider treating Plaintiff's diagnosis under his incarceration circumstances. (*See* [Docket Entry 41 at 10]).
>
> The medical records indicate that [Defendant] Russell consistently entered orders for Plaintiff's monitoring and treatment, when needed; acted reasonably in treating Plaintiff; and used her best medical judgment when treating Plaintiff. ([Docket Entry 41 at 9-10]; *see generally* [Docket Entry 43]). In fact, [Defendant] Russell's actions in monitoring and treating Plaintiff's hepatitis C symptoms while he was incarcerated were in line with prior recommendations by Central Prison.

([Docket Entry 43] at 56-57).  As such, other physicians treating Plaintiff during his incarceration prior to his time at the Jail had made the same determination and recommendation regarding monitoring of his hepatitis C until his ultimate release from incarceration, indicating the reasonableness of the conduct.

Thus, no reasonable person acting in [Defendant] Russell's position would have known or thought that her treatment efforts constituted some deliberate indifference to Plaintiff's medical needs or constituted some violation of Plaintiff's constitutional rights. Therefore, [Defendant] Russell is entitled to qualified immunity regarding Plaintiff's claims, and such claims should be dismissed.

(Docket Entry 37 at 17-18.)

Because Defendant Russell failed to develop any argument that her conduct did not amount to deliberate indifference under the Short elements, the Court should decline to enter summary judgment for her on the merits of Plaintiff's claim under the Fourteenth Amendment.  See Shaughnessy v. Duke Univ., No. 18CV461, 2020 WL 4227545, at *6 (M.D.N.C. July 23, 2020) (unpublished) (Eagles, J.) (ruling that "[the defendant] ha[d] not met its initial burden to show that it [wa]s entitled to summary judgment," where it "d[id] not explain why the evidence [wa]s insufficient to support a jury verdict on any particular element or elements [of the claims at issue]"); see also Hill v. Carvana, LLC, No. 1:22CV37, 2022 WL 1625020, at *5 (M.D.N.C. May 23, 2022) (unpublished) (Eagles, J.) ("It is not the Court's job to undertake the analysis and legal research needed to support a perfunctory argument, nor should a party expect [the C]ourt to do the work that [the party] elected

13

not to do." (internal citation and quotation marks omitted)).  The Court nonetheless "must address [the] argument that [Defendant Russell is] entitled to qualified immunity." Scinto v. Stansberry, 841 F.3d 219, 235 (4th Cir. 2016).

"[Q]ualified immunity shields government officials from liability for civil damages for the deprivation of federal rights so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Tarashuk v. Givens, 53 F.4th 154, 162 (4th Cir. 2022) (internal quotation marks omitted).  Simply stated, Defendant Russell possesses "entitle[ment] to qualified immunity unless [she] (1) violated a federal statutory or constitutional right, and (2) the unlawfulness of [her] conduct was clearly established at the time." Hulbert v. Pope, 70 F.4th 726, 732 (4th Cir. 2023) (internal quotation marks omitted).  "If [Plaintiff] fails at either prong, [Defendant Russell is] entitled to summary judgment." Amisi v. Brooks, 93 F.4th 659, 666 (4th Cir. 2024).

The second prong of the qualified immunity test "requires looking to the law *at the time* of the conduct in question." Mays, 992 F.3d at 301 (emphasis in original).  Well before October 2021, "it was clearly established that 'a pretrial detainee had a right to be free from any form of punishment under the Due Process Clause of the Fourteenth Amendment.'  And that right required 'that government officials not be deliberately indifferent to any serious

14

medical needs of the detainee.'" <u>Id.</u> (internal brackets and citation omitted) (quoting <u>Belcher v. Oliver</u>, 898 F.2d 32, 34 (4th Cir. 1990)).

However, as of and for more than two years after October 2021, the Fourth Circuit's "caselaw considered a deliberate-indifference claim [under the Fourteenth Amendment] to require both an objectively serious medical condition and <u>subjective knowledge by a [government] official of both the serious medical condition and the excessive risk posed by the official's action or inaction</u>." <u>Id.</u> (emphasis added) (internal quotation marks omitted); <u>see also Short</u>, 87 F.4th at 610-11 (abrogating, on December 8, 2023, prior precedent applying subjective element of claims for deliberate indifference under Eighth Amendment to claims for deliberate indifference under Fourteenth Amendment); <u>Nelson v. Guilford Cnty.</u>, No. 1:23CV233, 2024 WL 691372, at *6 (M.D.N.C. Feb. 20, 2024) (unpublished) (Peake, M.J.) ("Until recently, a claim for deliberate indifference by a pretrial detainee also included a subjective component . . . . [T]he Fourth Circuit in <u>Short</u> concluded that the subjective element does not apply to Fourteenth Amendment deliberate indifference claims by pretrial detainees."), <u>recommedation adopted</u>, slip op. (M.D.N.C. Mar. 25, 2024) (Biggs, J.). As a result, "if the [record] show[s] that [Defendant Russell] lacked the required subjective knowledge, then [she] would not have violated *clearly established* law. Only if the [record]

15

plausibly show[s] . . . subjective knowledge by [Defendant Russell] will [Plaintiff's] claim clear the qualified-immunity hurdle." Mays, 992 F.3d at 302 (emphasis in original); see also Ray v. Roane, 93 F.4th 651, 658 (4th Cir. 2024) (mandating "analy[sis of a defendant's] entitlement to qualified immunity using the same evidentiary record that informed [the] analysis of the constitutional merits"); Thorpe v. Clarke, 37 F.4th 926, 937-39 (4th Cir. 2022) (ruling that, for claims of deliberate indifference with both objective and subjective elements, qualified immunity analysis focuses solely on subjective element).

To recap, at the time of these events, under Fourth Circuit precedent, a Section 1983 claim for unconstitutional deprivation of medical care (whether brought by a pretrial detainee or a convicted prisoner) required proof that the defendant "acted with 'deliberate indifference' (subjective) to [the plaintiff's] 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).[6] "The subjective component . . . sets a particularly high bar to recovery." Id. "It requires that a [defendant] actually know of and disregard an objectively serious condition, medical need, or risk of harm." De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013) (internal quotation marks omitted).

---

6 As to the objective element, Defendant Russell's supporting brief does not contest the Court's prior "determin[ation] that Plaintiff's diagnosis of hepatitis C qualifies as a 'serious medical condition'" (Docket Entry 37 at 15 (quoting Docket Entry 19 at 22); see also Docket Entry 27 at 1 ("adopt[ing Docket Entry 19] in full")). (See Docket Entry 37 at 15.)

16

"Liability under this standard thus requires two showings," Parrish, 372 F.3d at 303:

> First, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the [defendant] *should have* recognized it; the[ defendant] actually must have perceived the risk. Second, the evidence must show that the official in question subjectively recognized that h[er] actions were inappropriate in light of that risk. As with the subjective awareness element, it is not enough that the [defendant] *should have* recognized that h[er] actions were inappropriate; the [defendant] actually *must have* recognized that h[er] actions were insufficient.

Id. (internal citations and quotation marks omitted) (emphasis in original); see also Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) ("When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." (internal quotation marks omitted)).

As reflected in prior quotations and related citations from Defendant Russell's supporting memorandum, her arguments bearing on qualified immunity rely on both the "Affidavit of [Defendant] Russell" (Docket Entry 41 at 1 (bold and all-caps font omitted)) and contemporaneously filed medical records (Docket Entry 43); however, despite its title, that former document "do[es] not qualify as [an] affidavit[] and [should] not [be] considered by the Court when ruling on [Defendant Russell's] summary judgment [motion]," Williams v. Gilbert, No. 7:22CV668, 2024 WL 1261211, at *4 (W.D. Va. Mar. 25, 2024) (unpublished) (internal quotation marks omitted). In that regard, "an affidavit, by definition, is a

17

statement reduced to writing and the truth of which is *sworn* to before someone who is authorized to administer an oath." Elder-Keep v. Aksamit, 460 F.3d 979, 984 (8th Cir. 2006) (emphasis in original) (internal quotation marks omitted); accord, e.g., United States v. Watkins, No. 4:08CR123, 2010 WL 11606742, at *2 (E.D. Va. Dec. 7, 2010) (unpublished). "Alternatively, federal law provides that[,] if [a] declaration is not sworn before an official authorized to administer an oath, it may nevertheless be admissible to support a summary judgment motion if made under penalty of perjury." LeMay v. United States, Nos. 1:02CR105-6, 1:06CV336, 2010 WL 3522333, at *1 (W.D.N.C. Sept. 7, 2010) (unpublished) (citing 28 U.S.C. § 1746(2)); accord, e.g., Nissho-Iwai Am. Corp. v. Kline, 845 F.2d 1300, 1306 (5th Cir. 1988).

The document at issue (1) describes the statements therein as made after "being first duly sworn" (but with no mention of the nature of any oath or the identity/authority of any oath-giver) (Docket Entry 41 at 1), (2) bears the signature of Defendant Russell (see id. at 11), and (3) concludes with a notary's signed and sealed "certif[ication] that [Defendant Russell] personally appeared before [the notary] th[at] day, acknowledging to [the notary] that [Defendant Russell] signed the foregoing document" (id.). As the plain language just quoted from that document manifests, such a "notary's certificate simply means that the [document's] signature is authentic." Network Computing Servs.

18

Corp. v. Cisco Sys., Inc., 152 F. App'x 317, 321 (4th Cir. 2005).

Hence, "[i]t is not a substitute for language indicating that

[Defendant Russell] understood [s]he risked prosecution for perjury

if [s]he gave false testimony." Id. Under these circumstances:

> Even though a notary public's stamp appears on [this
> document], none of the[ statements therein] are
> admissible for purposes of summary judgment because
> [Defendant Russell] did not swear to the[ document's]
> contents under penalty of perjury and there is no
> indication that the notary administered an oath to
> [Defendant Russell]. Accordingly, the Court [should] not
> consider any of the[ statements in this document] for
> purposes of summary judgment.

Latney v. Parker, No. 2:17CV24, 2017 WL 7794573, at *3 (E.D. Va.

July 20, 2017) (unpublished) )internal citation omitted), aff'd,

707 F. App'x 202 (4th Cir. 2017).

Plaintiff, in turn, did not sign the Amended Complaint under

oath or subject to perjury penalties (see Docket Entry 24 at 11)

and "the opponent of a summary judgment motion . . . cannot simply

rest upon his unverified complaint," Higgins v. Scherr, 837 F.2d

155, 156-57 (4th Cir. 1988).[7] Under these circumstances, the Court

(in evaluating, for summary judgment purposes, the subjective

element under the law governing Plaintiff's claim at the time of

---

[7] Plaintiff likewise did not verify the Response (see Docket
Entry 46 at 2) or the Response Memorandum (see Docket Entry 47 at
5) and thus his "[s]tatements in [those filings] . . . are not
evidence," Hill, 2022 WL 1625020, at *3. Plaintiff did file two
versions of the same "Affidavit" (Docket Entry 47-1 at 1
(underscoring omitted); Docket Entry 49 at 1 (underscoring
omitted)), but that document does not address the substance of
Plaintiff's claim; instead, it explains his submission of medical
records (see Docket Entry 47-1 at 1; Docket Entry 49 at 1).

the events in question) may look only to the medical records tendered by Defendant Russell (Docket Entry 43) and by Plaintiff (Docket Entry 48), the admissibility of which neither has contested (see Docket Entry 46 at 1-2; Docket Entry 47 at 1-5; Docket Entry 52 at 1-6). See, e.g., Jones v. Western Tidewater Reg'l Jail, 187 F. Supp. 3d 648, 654 (E.D. Va. 2016) ("[B]ecause [the d]efendants have not objected that the materials submitted cannot be presented in a form that would be admissible in evidence, and because the [c]ourt perceives no reason why such medical records could not be authenticated if [the p]laintiff was called upon to do so, the [c]ourt could consider their contends [sic] undisputed for purposes of the summary judgment motion." (internal brackets and quotation marks omitted)), reconsideration denied and judgment ordered, No. 2:15CV316, 2016 WL 3647591 (E.D. Va. June 30, 2016) (unpublished), aff'd sub nom., Jones v. Butler, 671 F. App'x 60 (4th Cir. 2016).

In terms of specific citations to medical records, Defendant Russell has pointed the Court to pages 8-10, 42-57, 65-66, 68-69, and 72-73 of Docket Entry 43. (See Docket Entry 37 at 14-18.) Those pages establish these pertinent facts:

1) on October 30, 2021, Plaintiff inquired of the Jail's medical staff "if he was going to be started on Hep[atitis] C medication" (Docket Entry 43 at 8; see also id. at 42 (memorializing Plaintiff's "Medical Sick Call" on October 29, 2021, relating his statement that, "[b]efore [he] left prison in

20

September[, he] was told [he] ha[d] Hep[atitis] C and that [his] liver enzymes were elevated to the extent [he] needed treatment," as well his request "to be seen to evaluate this"));

2) on November 2, 2021, Plaintiff submitted a "Medical Request" (A) stating (i) that, "[o]n 10/30/2021[, he] was seen for a sick call [he had] filled out about [his] treatment for hep[atitis C, which he] was diagnosed [with] before [he] left prison," and (ii) that "the nurse that s[aw Plaintiff] told [him] she was gonna [sic] make a note so [he] could start treatment," and (B) asking "when [it] was gonna [sic] start" (id. at 43);

3) on November 4, 2021, the Jail's medical staff "informed [Plaintiff] of providers [sic] response on [Plaintiff's] sick call [regarding] Hep[atitis] C/treatment for Hep[atitis] C," which "upset" Plaintiff and led him to demand "document[ation] in [his] chart that 'you won't tx me' [before he] walked away" (id. at 9);

4) on November 15, 2021, the Jail's medical staff "[f]axed NC Central Prison for records [on Plaintiff's] Hep[atitis] C" (id.; see also id. at 45 (request signed by Plaintiff and nurse at the Jail on November 14, 2021, seeking "all records relating to Hep[atitis] C" from "NC Central Prison/Medical Records"));

5) that same day, state prison officials faxed medical records for Plaintiff to the Jail (see id. at 46 (cover sheet); see also id. at 47 (state prison record dated July 8, 2021, documenting Plaintiff's "positive" test for "Hep[atitis] C Ab 06/10/21 with ALT

21

elevation"), 48 (state prison record dated July 29, 2021, documenting Plaintiff's "lab results" showing "elevated ALT 131 (0-56), and AST 59 (4-44)"), 49 (state prison record dated July 30, 2021, documenting Plaintiff's "previously negative HCV RNA now HCV RNA 15,300,000," need for "additional lab tests," and "refer[al] to hepatitis C committee"), 56 (state prison record documenting these "Recommendations" from "Treatment of Hepatitis C" committee on August 26, 2021: "Continue to monitor [Plaintiff] until his[] release date. Case management should provide local treatment options[.] . . . If [his] release date is extended, the Provider should continue to monitor at the facility per HEP-C Policy and refer back to the committee if any changes[.]" (all-caps font and underscoring omitted)), 57 (state prison record dated August 31, 2021, documenting "Hep[atitis] C committee recommendation . . . [to] continue to monitor [Plaintiff] until his[] release date" and for "[c]ase management [to] provide local treatment options"));

6) on November 23, 2021, a person with an illegible signature met with Plaintiff at the Jail's medical office, with "Sgt. Gainey present[,] to discuss Hep[atitis] C treatment" (id. at 9);[8]

7) that person (apparently Defendant Russell) "explained to [Plaintiff] that at the county level Hep[atitis] C is not treated

---

8 That same signature appears elsewhere in these records in contexts suggesting that it belongs to Defendant Russell. (See, e.g., Docket Entry 43 at 13-17; see also Docket Entry 41 at 5 (reciting Defendant Russell's unsworn statement that, "[o]n November 23, 2021, [she] met with [Plaintiff] to discuss [his] hepatitis C treatment issues" (citing Docket Entry 43 at 9)).)

22

due to the possibility of [a detainee] bonding out so that treatment is not completed or that this is considered a forced recovery so the ID doctor's [sic] will not treat this until [Plaintiff] ha[s] been out of [the J]ail for at least 6 months" (id.; see also id. ("I advised him to let medical know if any thing changes and we will see/treat any symptoms that may arise."));[9]

8) from March 11 through 17, 2022, the Jail's medical staff twice drew Plaintiff's blood for testing, but the laboratory failed to provide results (see id. at 10);

9) on March 24, 2022, Plaintiff submitted a "Medical Sick Call" complaining that, "when [he] woke up th[at] morning[, he] had a yellow tint to [his] eyes and [his] right side hurt" (id. at 65; see also id. ("[I] have been at a loss for energy and have had little appetite. [T]he tint to my eyes left around noon but [I]

---

9 Consistent with the above-quoted records, two notes (the first dated November 10, 2021, and the second dated November 17, 2021), each accompanied by the illegible signature evidently belonging to Defendant Russell, handwritten on a "Medical Sick Call" form Plaintiff submitted on November 2, 2021, read:

> We do not have any record of you having Hep[atitis] C. Hep[atitis] C is not treated in the county facilities[,] due to it being considered a forced recovery. You will have to be treated once released or in prison.
>
> . . . .
>
> Records showed Hep[atitis] C pos[itive,] but again this treatment is not initiated in the county facilities due to it being considered a force [sic] recovery per Infectious Disease.

(Docket Entry 43 at 44.)

still feel sluggish and at loss for appetite[. I] was diagnosed with hep[atitis C in S]eptember 2021[.]")):

10) that same day, a nurse assessed Plaintiff and "[c]omment[ed:] No yellowish tint to eyes or skin noted @ this time" (id. at 66; see also id. at 67 (documenting results of urine test performed on March 24, 2022));

11) on March 29, 2022, a nurse "[s]poke with [Plaintiff] about his grievance," i.e., his "concern[] about his hep[atitis] C treatment," and he "was told that if he was having symptoms he can put in a sick call and [the Jail's medical staff] would treat his symptoms" (id. at 10; see also id. ("[Plaintiff] is also concerned about his blood work and request[ed] that it get completed."));

12) on March 30, 2022, "[Plaintiff's] blood [was] redrawn with no problem and [was] sent to the lab" with results returned on April 4, 2022 (id.; see also id. at 68-69 (laboratory request and results report indicating that, on or about March 30, 2022, Defendant Russell ordered "comprehensive metabolic panel" and "lipid panel" for Plaintiff (all-caps font omitted))); and

13) on April 22, 2022, Defendant Russell ordered a "hepatic function panel" for Plaintiff with results returned on April 23, 2022 (id. at 72-73; see also id. at 10 (noting blood draw and receipt of results on April 22 and 24, 2022, respectively)).[10]

---

10 "[A] Hepatic Function Panel . . . evaluat[es] the status of [the patient's] Hepatitis C." Thompson v. Taylor, No. 3:11CV28, 2011 WL 3842024, at *1 (M.D. Ala. Aug. 29, 2011) (unpublished); see
(continued...)

Plaintiff, for his part, did not explicitly address qualified immunity in the Response (see Docket Entry 46 at 1-2) or the Response Memorandum (see Docket Entry 47 at 1-5); however, he did maintain that Defendant Russell "knew Plaintiff had Hepatitis C while housed at [the Jail], knew Plaintiff saught [sic] treatment multiple times and refused Plaintiff treatment multiple times" (id. at 1-2; see also id. at 2 (asking "for an order denying Defendants summary judgment")).[11]  But that line of argument ignores the key

_____

10(...continued)
also Moshier v. United States, Civ. No. 05-180, 2008 WL 2275448, at *3 (W.D. Pa. May 30, 2008) (unpublished) (describing "Hepatic Function Panel" as "liver function test").

11 In opposition to summary judgment, Plaintiff relied on several of the same documents cited by Defendant Russell in support of summary judgment.  (See, e.g., Docket Entry 47 at 2-3 (citing, inter alia, Docket Entry 48 at 1, 4, 7, 9, 11); see also Docket Entry 37 at 14, 16 (citing, inter alia, Docket Entry 43 at 42-44); compare Docket Entry 43 at 42-44, with Docket Entry 48 at 1, 4, 7, 9, 11.)  Moreover, other records singled out in the Response Memorandum (see, e.g., Docket Entry 47 at 3-4 (citing Docket Entry 48 at 13, 15, 21-23, 31)) do not contradict the facts established by the records (quoted above) which Defendant Russell highlighted in connection with her qualified-immunity defense (see Docket Entry 48 at 13 ("General Grievance" submitted by Plaintiff on November 5, 2021, repeating information also contained in Medical Sick Call submitted by Plaintiff on October 29, 2021, and Medical Request submitted by Plaintiff on November 2, 2021, and complaining that "medical is refuseing [sic] to treat [Plaintiff] for Hep[atitis ]C," with follow-up comments from "nurse" that "[Plaintiff's] inquiry ha[d] been forwarded to the provider for review," that "Hep[atitis] C is not treated in the county facilities due to it being considered what is referred to as 'forced recovery,'" and that "[Plaintiff] will have to be treated once [he is] released or in prison"), 15 ("Medical Request" submitted by Plaintiff on November 20, 2021, requesting treatment for Hepatitis C after receipt by Jail of prison records showing diagnosis, with follow-up note from "nurse" stating:  "I was told by the provider that we do not treat Hep[atitis] C on the county level.  Hep[atitis] C would
(continued...)

25

issue raised by Defendant Russell's qualified-immunity defense, i.e., assuming "[she] subjectively recognized [the] substantial risk of harm [posed by Plaintiff's Hepatitis C condition]," Parrish, 372 F.3d at 303, does the record "show that [she] subjectively recognized that h[er] actions were inappropriate in light of that risk," id. (internal quotation marks omitted).

Importantly, "it is not enough that [Defendant Russell] *should have* recognized that h[er] actions were inappropriate; [she] actually *must have* recognized that h[er] actions were insufficient." Id. (emphasis in original). And, although circumstantial proof can suffice on that second prong of the subjective element of a deliberate indifference claim (as dictated

---

11(...continued)
only be treated if [you] went to prison. I have put you down for a visit when [the provider] comes this week so that you can discuss it with her."), 21-23 ("General Grievance" and "Medical Request" submitted by Plaintiff on March 24, 2022, and "General Grievance" submitted by Plaintiff on March 25, 2022, complaining about lack of treatment for Hepatitis C and asking for identity of responsible persons, with follow-up notes from "nurse" referring Plaintiff back to his discussion with Defendant Russell on November 23, 2021), 31 ("Medical Request" submitted by Plaintiff on October 5, 2022, asking "when [his] labs are due to be done to check [his] H[epatitis] C levels," with response from "nurse" that "[w]e do not do Hep[atitis] C levels since we do not do treatment in this facility" (stray period omitted)); see also Docket Entry 47 at 4-5 (citing Docket Entry 48-1 (Medication Administration Records) and Docket Entry 48-2 (Physician's Order logs) for uncontested proposition that "at no time was there a medicine used to treat Hepatitis C ordered for or administered to Plaintiff," describing Docket Entry 48-3 at 5-17 as "lab results that show Plaintiff had Hepatitis C and that the levels were very high," and characterizing Docket Entry 48-4 as "show[ing] Medicals [sic] hand written notes (Progress Notes) that show Defendant was aware of Plaintiffs [sic] serious medical need and still refused to treat Defendant [sic]")).

by controlling precedent at the time of these events), e.g., if the record permitted "a factfinder [to] conclude that [Defendant Russell's] response to [the] perceived risk was so patently inadequate as to justify an inference that [she] actually recognized that [her] response to th[at] risk was inappropriate," id., "[her] response to [the] perceived risk must be more than merely negligent or simply unreasonable," id. at 306-07; see also Wynn v. Mundo, 367 F. Supp. 2d 832, 837 (M.D.N.C.) (Bullock, J.) ("Significantly, an error of judgment on the part of prison medical staff . . ., while perhaps sufficient to support an action for malpractice, will not constitute a constitutional deprivation redressable under § 1983." (internal quotation marks omitted)), aff'd, 142 F. App'x 193 (4th Cir. 2005).

Plaintiff's proof falls short on that front. Specifically, the record (as recounted above) reflects Defendant Russell's belief (summarized in her reply) "that[,] due to the policy of the local outside infectious disease physician specialists not to provide hepatitis C treatment to inmates at the Jail, Plaintiff could not be provided the direct hepatitis C treatment he desired while he was at the Jail." (Docket Entry 52 at 2.) Previously detailed record material additionally establishes "that [Plaintiff] received routine annual bloodwork monitoring and as-needed symptom management regarding his diagnosis of hepatitis C while at the Jail." (Id. at 3.) Nor does anything in the record support the

27

view that this "response to [the] perceived risk [posed by Plaintiff's condition] was so patently inadequate as to justify an inference that [Defendant Russell] actually recognized that [her] response to th[at] risk was inappropriate," Parrish, 372 F.3d at 303;[12] rather, "the evidence shows, at most, that [her] response to [the] perceived substantial risk was unreasonable under the circumstances," id. at 307, and such a showing cannot overcome her defense of qualified immunity under the then-clearly established law, see id. at 306-07 ("[A defendant's] response to a perceived risk must be more than . . . simply unreasonable.").

In sum, the Court should enter summary judgment in Defendant Russell's favor based on her qualified-immunity defense because "the record before [the Court] here contains no evidence suggesting that [she] recognized that [her] actions were inappropriate under the circumstances." Id. at 308.[13]

---

12 Of particular significance on that point (and as emphasized by Defendant Russell's supporting memorandum without rebuttal by Plaintiff in his reply), "[Defendant] Russell's actions in monitoring and treating Plaintiff's hepatitis C symptoms while he was incarcerated were in line with prior recommendations by Central Prison." (Docket Entry 37 at 18 (citing Docket Entry 43 at 56-57).) "As such, other physicians treating Plaintiff during his incarceration prior to his time at the Jail had made the same determination and recommendation regarding monitoring of his hepatitis C until his ultimate release from incarceration, indicating the reasonableness of the conduct." (Id.)

13 Defendant Russell's supporting memorandum contains a separate argument section entitled "Plaintiff's claims against [Defendant] Russell for punitive damages must fail." (Docket Entry 37 at 18 (bold and all-caps font omitted).) "With summary judgment on [Plaintiff's individual-capacity] claim [under Section 1983 due
(continued...)

Defendant Shaw

The Amended Complaint lodges solely an official-capacity claim against Defendant Shaw. (See Docket Entry 24 at 2.) Under Section 1983, establishment of official-capacity liability requires proof that "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said

---

13(...continued)

to be] granted in favor of Defendant[ Russell], the question of whether punitive damages are available [against her] becomes moot." Whyte v. PP & G, Inc., Civ. Nos. 13-2806, 13-3706, 2015 WL 3441955, at *7 (D. Md. May 26, 2015) (unpublished). Lastly (regarding Defendant Russell), the Amended Complaint asserts a claim against her not just in her individual capacity, but also in her official capacity. (See Docket Entry 24 at 2.) "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which [the defendant] is an agent," Monell v. Department of Soc. Servs. of City of N.Y., 436 U.S. 658, 690 n.55 (1978); see also Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity [employing the defendant]."), i.e., in this instance, Defendant Russell's alleged "[e]mployer" (Docket Entry 24 at 2), "Southern Health Partners" (id.), see Rodriguez v. Smithfield Packing Co., Inc., 338 F.3d 348, 355 (4th Cir. 2003) (recognizing that "private corporations can [] be held liable under § 1983 if an official policy or custom of the corporation cause[d] the alleged deprivation of federal rights" (internal quotation marks omitted)). "[Q]ualified immunity does not apply to such claims." Atkinson v. Godfrey, ___ F.4th ___, ___, 2024 WL 1916760, at *7 (4th Cir. May 2, 2024) (internal citation omitted). Accordingly, Plaintiff's official-capacity claim against Defendant Russell "[is] measured against current law, without regard to whether [her employer's] obligations were clearly established at the time of the alleged violations." Id. (internal quotation marks omitted). As previously noted, Defendant Russell did not develop any argument for summary judgment based on current law and she likewise did not develop any argument for summary judgment on the official-capacity claim against her (see Docket Entry 37 at 11-19; see also id. at 11-12 (baldly declaring that "Plaintiff appears to allege a § 1983 claim against [Defendant] Russell . . . improperly in her official capacity")). Under these circumstances, the Court should only dismiss the individual-capacity claim against Defendant Russell.

29

to represent official policy, inflict[ed] the injury." <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 121 (1992) (internal quotation marks omitted). The records tendered by Defendants Russell and Shaw, as well as the records tendered by Plaintiff, discussed at length in the preceding subsection, do <u>not</u> show the existence of a policy or custom of Defendant Shaw or the Office of Sheriff of Cabarrus County (on whose behalf he, by definition, acts as a final policy-maker), which deprived Plaintiff of treatment for Hepatitis C. (<u>See</u> Docket Entries 43, 48, 48-1, 48-2, 48-3, 48-4.) To the contrary (again as previously detailed), those records reveal that Defendant Russell, a medical professional, concluded that infectious disease specialists in the area would not treat Plaintiff's Hepatitis C as he desired, while he remained in pretrial detention at the Jail, due to the possibility of interruption of that treatment upon his release on bond.[14]

---

14 The "Affidavit of [Defendant] Shaw" (Docket Entry 40 at 1 (bold and all-caps font omitted)) contains statements from Defendant Shaw confirming that (A) he "has contracted with Southern Health Partners, Inc. ('SHP') for the provision of medical care to inmates at [the Jail]" (<u>id.</u> at 2), (B) he has adopted a policy calling for "[n]on-medical staff at [the Jail to] . . . rely on the medical judgments and decisions of qualified medical staff" (<u>id.</u>), (C) he "was not made aware of any issues with [Plaintiff's] medical treatment during his time at [the Jail] from September 11, 2021 through February 1, 2023, until [Defendant Shaw] was served with . . . the Complaint in this action on January 3, 2023" (<u>id.</u> at 3), (D) he "underst[ood] that infectious disease specialist medical providers with whom SHP medical staff and SHP's independent contractors consulted would not treat inmates with hepatitis C, such as [Plaintiff], who were housed in county facilities such as [the Jail] due to the treatment being considered 'forced recovery'" (<u>id.</u>), (E) "[a]s of September 11, 2021 through February 1, 2023,
(continued...)

30

Furthermore, Defendant Shaw (acting as the final policy-maker for the Office of the Sheriff of Cabarrus County) "w[as] entitled to rely on the medical judgments made by medical personnel regarding Plaintiff's [medical] treatment." Lewis v. Hoke Cnty., No. 1:17CV987, 2020 WL 5213929, at *8 (M.D.N.C. Sept. 1, 2020) (unpublished) (Webster, M.J.), recommendation adopted, 2022 WL 292928 (M.D.N.C. Feb. 1, 2022) (unpublished) (Osteen, J.), aff'd, No. 22-6171, 2022 WL 1641282 (4th Cir. May 24, 2022) (unpublished), cert. denied, ___ U.S. ___, 143 S. Ct. 740 (2023); accord, e.g., Long v. Policarpio, No. 2:14CV10, 2015 WL 65061, at *3 (N.D.W. Va. Jan. 5, 2015) (unpublished). Finally, "there is no evidence to suggest that either [Defendant Shaw] or [any other policy-maker for the Office of Sheriff of Cabarrus County] intentionally denied or

_____

14(...continued)
there was no policy of [the Jail] which existed concerning the treatment of hepatitis C" (id.), and (F) "any treatment decisions concerning the treatment of hepatitis C would be ordered or determined by outside medical professionals with whom medical staff consulted" (id.). That document, however, does not contain either a notarization (or other indicia) that Defendant Shaw made those statements under an oath to tell the truth administered by a person authorized to administer such oaths or a certification that Defendant Shaw made those statements subject to perjury penalties. (See id. at 1 (describing statements to follow as made after "being first duly sworn," but without recounting nature of oath or identity/authority of person who administered it), 5 (setting forth only notary's "certif[ication] that [Defendant Shaw] personally appeared before [notary and] . . . acknowledg[ed] to [notary] that [Defendant Shaw] signed th[at ] document").) For reasons and based on authority discussed in the prior subsection (in relation to a matching document filed by Defendant Russell), Defendant Shaw's foregoing statements – and any similar statements in the "Affidavit of [Defendant] Russell" (Docket Entry 41 at 1 (bold and all-caps font omitted)) – do not constitute evidence at summary judgment.

31

delayed Plaintiff from receiving access to medical care or . . . intentionally interfered with any prescribed treatment." Lewis, 2020 WL 5213929, at *8.[15]

Given these considerations, the record (construed in Plaintiff's favor) would not permit a reasonable fact-finder to impose liability on Defendant Shaw in his official capacity for deliberate indifference to Plaintiff's serious medical needs and the Court thus should enter summary judgment for Defendant Shaw on the merits of this (lone) claim against him.[16]

## CONCLUSION

Defendant Russell has not developed any argument that Plaintiff's individual-capacity and official-capacity claims against her for deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment fail on the merits under the elements recently adopted by the Fourth Circuit for such claims; however, even viewing the record in Plaintiff's favor, the

_____

15 Notably, after Defendant Shaw raised summary judgment contentions consistent with the analysis above (see Docket Entry 39 at 12-15), Plaintiff neither countered those contentions nor otherwise constructed any meaningful rationale for Defendant Shaw's liability (see Docket Entry 46 at 1-2; Docket Entry 47 at 1-5).

16 That disposition would moot Defendant Shaw's alternative position that "punitive damages are not available or recoverable by Plaintiff against [Defendant] Shaw in relation to any § 1983 claim against [Defendant] Shaw in his official capacity" (Docket Entry 39 at 17). See, e.g., Singleton v. Champagne, Civ. No. 17-17423, 2019 WL 917728, at *5 (E.D. La. Feb. 25, 2019) (unpublished) (deeming issue of "punitive damages in regard to [the d]efendants in their official capacities [as] moot in view of [the] dismissals of [those] official capacity claims").

defense of qualified immunity – which incorporates the more demanding, legal standard that governed these claims at the time they arose – entitles Defendant Russell to summary judgment on the individual-capacity claim (but not the official-capacity claim) against her.  In addition, the record (again, viewed in the light most favorable to Plaintiff) establishes, as a matter of law, that his official-capacity claim against Defendant Shaw lacks merit.

**IT IS THEREFORE RECOMMENDED** that the Summary Judgment Motions (Docket Entries 36, 38) each be granted in part, in that the Court (A) should enter summary judgment in favor of Defendant Russell on Plaintiff's claim against Defendant Russell in her individual capacity (but not in her official capacity) based on her qualified-immunity defense, and (B) should enter summary judgment (on the merits) in favor of Defendant Shaw on Plaintiff's claim against Defendant Shaw in his official capacity (the only capacity denominated against him in the Amended Complaint).

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

May 28, 2024